UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| EARL WILEY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No.  4:14CV330 TIA |
| | ) | |
| CAROLYN W. COLVIN, Acting | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM AND ORDER

Plaintiff Earl Wiley brings this action pursuant to 42 U.S.C. §§ 405(g) and

1383(c)(3) seeking judicial review of the Commissioner's final decision denying

his claim for supplemental security income (SSI) under Title XVI of the Social

Security Act, 42 U.S.C. §§ 1381, *et seq.*  All matters are pending before the

undersigned United States Magistrate Judge, with consent of the parties, pursuant

to 28 U.S.C. § 636(c).  Because the Commissioner's final decision is supported by

substantial evidence on the record as a whole, it is affirmed.

### I.      Procedural History

On March 3, 2011, the Social Security Administration denied plaintiff's

November 12, 2010, application for SSI, in which plaintiff claimed he was

disabled because of depression, psychosis, anxiety, gout, broken elbow, and

swelling and pain of the feet and hands. (Tr. 55, 57-61, 114-18, 144.) At plaintiff's request, a hearing was held before an administrative law judge (ALJ) on July 3, 2012, at which plaintiff and a vocational expert testified. (Tr. 24-44.) On August 21, 2012, the ALJ denied plaintiff's claim for benefits, finding vocational expert testimony to support a finding that plaintiff could perform work as it exists in significant numbers in the national economy. (Tr. 8-20.) On January 2, 2014, the Appeals Council denied plaintiff's request for review of the ALJ's decision. (Tr. 1-5.) The ALJ's decision is thus the final decision of the Commissioner. 42 U.S.C. § 405(g).

In this action for judicial review, plaintiff claims that the ALJ's decision is not supported by substantial evidence on the record as a whole. Plaintiff specifically argues that the ALJ erred by relying on one-time evaluations to find plaintiff not disabled. Plaintiff also contends that the ALJ erred in determining his residual functional capacity (RFC) by failing to identify the evidence of record that supported her RFC findings. Plaintiff argues further that the evidence fails to support the RFC findings. Finally, plaintiff contends that the ALJ erred when she failed to include physical limitations in the RFC despite finding plaintiff to suffer from severe physical impairments. Plaintiff requests that the matter be reversed and remanded for an award of benefits or for further evaluation. For the reasons that follow, the ALJ did not err in her determination.

## II. Testimonial Evidence Before the ALJ

A.     Plaintiff's Testimony

At the hearing on July 3, 2012, plaintiff testified in response to questions posed by the ALJ and counsel.  Plaintiff was fifty-one years of age at the time of the hearing.

Plaintiff testified that he currently lives in a house with his sister.  (Tr. 27, 37.)  He completed the eleventh grade in high school and did not obtain his GED. (Tr. 27-28.)  Plaintiff's Work History Report shows that plaintiff worked as a laborer unloading trucks at a warehouse from April 1996 to April 1998.  Plaintiff was self-employed working on cars from 2000 to 2010.  (Tr. 167.)  Plaintiff testified that he currently performs jobs such as cutting grass, painting houses, and working on cars.  (Tr. 28-29.)

Plaintiff testified that he suffers from depression and bipolar disorder and that the conditions make him unaware of his actions.  Plaintiff testified that he experiences episodes about twice a week where he does things and does not remember.  Plaintiff testified that he has a poor memory.  Plaintiff testified that he walks around on good days and does not feel like doing anything on bad days. Plaintiff sits and watches television on bad days.  Plaintiff has no difficulty going out in public.  (Tr. 32-34.)

Plaintiff testified that he also has schizophrenia and has heard voices for

three or four years. Plaintiff testified that he hears voices about three days a week, and they tell him to hurt himself. (Tr. 34-35.) Plaintiff testified that he previously attempted suicide by hanging and that his sister found him. (Tr. 36.)

Plaintiff takes medication for his mental conditions that somewhat helps. Plaintiff testified that his sister reminds him to take his medication. (Tr. 35.)

As to his physical impairments, plaintiff testified that he has arthritis in his hands, which sometimes causes numbness. Plaintiff has had this condition for four or five years. (Tr. 32.) Plaintiff testified that his hands become numb after doing dishes for ten or fifteen minutes, and they stay numb for about an hour. Plaintiff's hands also become numb when they are cold, and he sometimes cannot move them. Plaintiff testified that he cannot do tasks around the house without experiencing pain in his hands. He can lift a gallon of milk with his left hand and a loaf of bread with his right hand. (Tr. 37-38.)

Plaintiff testified that he cannot cook his own meals, go to the store, handle money, or do his laundry. Plaintiff's sister cooks for him and takes him to various appointments. Plaintiff testified that he sometimes goes a week without showering and his sister reminds him to shower. (Tr. 36-37.)

B.      Vocational Expert Testimony

Delores Gonzales, a vocational expert, testified at the hearing in response to questions posed by the ALJ and counsel.

Ms. Gonzales classified plaintiff's past work as a material handler as heavy and semi-skilled; as a forklift driver and lawn mower as medium and semi-skilled; and as a mechanic and house painter as medium and skilled.  (Tr. 40-41.)

The ALJ asked Ms. Gonzales to assume that plaintiff was limited to medium, unskilled work and could not perform work that included more than infrequent handling of customer complaints.  Ms. Gonzales testified that plaintiff could not perform any of his past work but could perform other work such as mold filler, of which 820 such jobs exist in the State of Missouri and 30,600 nationally; filter operator, of which 780 such jobs exist in the State of Missouri and 9,660 nationally; and housekeeping/cleaner, of which 1,406 such jobs exist in the State of Missouri and 210,560 nationally.  (Tr. 42.)

In response to counsel's questions, Ms. Gonzales testified that a person could not perform any such jobs if he were to miss work four days a month on an unscheduled basis.  Ms. Gonzales further testified that such jobs would not be available for a person who needed to take frequent unscheduled breaks four times a day for ten to fifteen minutes each.  Ms. Gonzales testified that if a person could have only limited superficial contact with the public or with coworkers, he could continue to perform work as a housekeeper/cleaner.  (Tr. 43.)

### III.  Medical Evidence Before the ALJ

Plaintiff visited Urgent Care on August 26, 2010, with complaints of pain

and swelling near the toes of the right foot. Plaintiff reported no trauma or history of gout. Plaintiff reported the pain to have bothered him from time to time in the past. Plaintiff was noted to walk with an antalgic gait with a cane. Examination showed non-severe tenderness over the dorsum of the right foot. An x-ray of the foot showed mild degenerative changes about the first toe and fusion of the distal and middle phalanges of the fifth toe. Plaintiff was diagnosed with gout and was prescribed Prednisone. (Tr. 211, 213-14.)

On September 1, 2010, plaintiff completed a Mental Health Screening form for Community Alternatives–Places for People and reported that he felt he needed help for emotional problems. Plaintiff reported having heard voices or seen objects unheard or not seen by others, having been depressed for weeks at a time, feeling that others were speaking against him or were trying to influence his thoughts and behaviors, experiencing strong fears, having had periods of excessive energy, and having had obsessive impulses. (Tr. 202-04.) Screening for alcohol abuse showed a need for full intervention. (Tr. 200-01.) Plaintiff was accepted into the program for treatment of the homeless. (Tr. 204.)

Plaintiff went to the emergency room at St. Louis University Hospital on January 18, 2011, with complaints of pain and swelling in his right fingers after having fallen on ice a couple of days prior. Range of motion was noted to be limited about the fingers with pain. Swelling was also noted. X-rays of the right

hand showed no acute osseous abnormality. Mild osteoarthritis of the joints of the first and second fingers was noted. Plaintiff was diagnosed with dislocation, closed fracture, and tendon injury. Splinting was applied to the right index finger. (Tr. 246-53.)

Plaintiff underwent a consultative physical examination for disability determinations on February 3, 2011. Plaintiff reported having previously worked as a warehouse laborer but that he stopped working in 1990 because he was too tired and his bones hurt. Plaintiff reported living independently in a boarding home. Dr. Inna Park noted plaintiff to have been diagnosed with gout, depression, anxiety, and psychosis. Plaintiff's current medications were noted to be Abilify, Celebrex, and another medication for mood. Plaintiff currently complained of elbow pain and gout. Plaintiff reported having gout since he was a teenager and that the condition affects his toes and fingers. Plaintiff reported that the condition flares every two months and that he resolves the symptoms with Epsom salt soaks for about three days. Plaintiff reported that taking Prednisone the previous August for a flare up in his foot was very helpful. Plaintiff uses a cane every three or four months when his foot or knee bothers him. Plaintiff also reported having arthralgias in his hands with a recent flare up in a finger of his right hand. With respect to his right elbow, plaintiff reported that he had surgery in 2000 for a fracture and has since experienced intermittent stiffness and pain with cold

weather. Physical examination showed moderate to severe inflammation of the entire right finger with tenderness, warmth, and restricted range of motion. Significantly decreased range of motion was noted about the right wrist with some restricted range of motion noted about the ankles bilaterally. Plaintiff could not fully extend the second finger of his left hand. He could not flex the second finger of his right hand. No atrophy was noted. No obvious gout tophi were noted. An x-ray of the right hand showed osteoarthritis of the interphalangeal joints of the thumb and index finger. An x-ray of the right wrist was negative. Plaintiff was able to get on and off the examination table independently. Plaintiff had a normal gait and station and was able to walk on his heels and toes with no difficulty. Plaintiff did not have an assistive device with him. Plaintiff was able to squat to seventy-five percent with complaints of right knee pain. Motor strength, muscle tone, and sensory exams were normal. Dr. Park diagnosed plaintiff with gout with decreased range of motion at the right wrist and inflammation of the right index finger. Dr. Park also diagnosed plaintiff with intermittent post-traumatic and post-surgical arthralgias of the right elbow. (Tr. 216-24.)

On that same date, February 3, 2011, plaintiff underwent a consultative psychological evaluation for disability determinations. Plaintiff reported being last employed in 2008 as a laborer. Plaintiff reported hearing voices that tell him to hurt himself and that he has heard such voices for about one year. Plaintiff

reported being less likely to hear the voices if he is busy. Plaintiff reported having

seen a psychiatrist at Community Alternatives within the past year. Plaintiff

denied any other psychiatric treatment. Plaintiff reported drinking a pint of hard

liquor about once every two weeks and that he has experienced blackouts. L. Lynn

Mades, Ph.D., noted that plaintiff appeared to be minimizing his substance use.

Mental status examination showed plaintiff to be well groomed and to have normal

hygiene. Plaintiff's attitude was noted to be pleasant and cooperative. Plaintiff

was alert, coherent, logical, and oriented in all spheres. His eye contact was good.

No problems were noted in plaintiff's language ability. Plaintiff's mood was

euthymic and his affect was full and generally appropriate. Dr. Mades noted no

apparent mood disturbance. Plaintiff reported having no delusions. Dr. Mades

noted plaintiff's claimed auditory hallucinations to be atypical and equivocal, and

found them not to appear credible. No behaviors indicative of psychosis were

noted. Reality testing was adequate and flow of thought was logical and

sequential. No evidence of thought disturbance was noted. Memory was noted to

be intact. Insight and judgment were slightly limited. Plaintiff reported his daily

activities to include spending time at the park or zoo and taking walks downtown.

Plaintiff reported getting along with others as long as he was not around people

who are drinking. Plaintiff reported no problems caring for his personal needs.

Dr. Mades noted plaintiff's attention and concentration to be adequate and that he

had appropriate persistence and pace. Dr. Mades diagnosed plaintiff with alcohol abuse. Alcohol-induced psychotic behavior was to be ruled out. A Global Assessment of Functioning (GAF) score of 70[1] was assigned. (Tr. 226-30.)

On March 3, 2011, Ricardo Moreno, Ph.D., a psychological consultant with disability determinations, completed a Psychiatric Review Technique Form in which he opined that plaintiff's mental impairment was not severe, specifically opining that plaintiff experienced no limitations in activities of daily living or in concentration, persistence, or pace; mild difficulties in maintaining social functioning; and no repeated episodes of decompensation of extended duration. (Tr. 231-42.)

Plaintiff was discharged from the Community Alternatives program on March 30, 2011, after successful completion of the program. It was noted that plaintiff regularly attended group meetings and saw a psychiatrist. Plaintiff currently reported that he felt "up" some days and "down" on other days. Plaintiff's medications were noted to be Abilify, Celebrex, and Celexa. At discharge, it was noted that plaintiff continued to hear voices, had high and low moods, and felt "so-so" physically. (Tr. 195-96.)

---

[1] A GAF score considers "psychological, social, and occupational functioning on a hypothetical continuum of mental health/illness." *Diagnostic and Statistical Manual of Mental Disorders*, Text Revision 34 (4th ed. 2000) (DSM-IV-TR). A GAF score between 61 and 70 indicates some mild symptoms (*e.g.*, depressed mood and mild insomnia) or some difficulty in social, occupational, or school functioning (*e.g.*, occasional truancy, or theft within the household), but generally functioning pretty well, has some meaningful interpersonal relationships.

Plaintiff went to the emergency room at St. Louis University Hospital on July 8, 2011, complaining of a recent onset of moderate left knee pain. Plaintiff was noted to be using a cane. Plaintiff reported taking over the counter anti-inflammatory medication. Physical examination showed range of motion about the knee to be mildly limited because of pain. Minimal swelling was noted. Plaintiff had normal pulses, and sensation was intact. An x-ray of the knee showed no acute osseous abnormality. Mild joint space narrowing was noted. Plaintiff was given ibuprofen and acetaminophen, and an ace wrap was applied to the knee. Plaintiff was diagnosed with knee pain, was discharged to home, and was prescribed ibuprofen. (Tr. 259-64.)

Plaintiff went to the emergency room at SSM DePaul Health Center on May 10, 2012, and reported that he was having suicidal thoughts with a plan to either hang himself or walk into traffic. Plaintiff reported having been prescribed Abilify and Celexa but to have run out of medication. Plaintiff reported not having any medication for five months. Plaintiff reported feeling paranoid and scared and that he heard voices telling him to harm himself. Plaintiff reported living with his sister. Plaintiff reported having homicidal thoughts to hurt people if they "mess with" him. Plaintiff denied any medical complaints or of having medical problems in the past. Dr. Zafar Rehmani noted plaintiff's mood to be sad and his affect restricted. Plaintiff had limited insight and poor judgment. Plaintiff was

diagnosed with depressive disorder and psychotic disorder. Schizophrenia and major depressive disorder with psychosis were to be ruled out. Plaintiff was assigned a GAF score of 20.[2] Plaintiff was started on Celexa and Abilify, and he was admitted to St. Vincent DePaul Hospital. During his admission, plaintiff participated appropriately in individual, group, and milieu therapy and medication management. Plaintiff was discharged on May 14, 2012. Mental status examination upon discharge showed plaintiff to be alert and oriented with an okay mood and calm and pleasant affect. Plaintiff's thought process was noted to be linear and logical. Plaintiff had no delusions and denied any auditory or visual hallucinations. Plaintiff denied any homicidal or suicidal ideations. Plaintiff's insight and judgment were noted to be fair. Plaintiff was assigned a GAF score of 52.[3] Plaintiff's prognosis was questionable and was dependent upon community support, medication management, and psychotherapy. (Tr. 271-85.)

Plaintiff visited Dr. Ambar A. Afshar at Grace Hill Health Centers on June 14, 2012, with complaints of helplessness and hopelessness. Plaintiff denied any current suicidal or homicidal ideation. Plaintiff reported not sleeping well and

---

[2] A GAF score between 11 and 20 indicates some danger of hurting self or others (*e.g.*, suicide attempts without clear expectation of death; frequently violent; manic excitement), or occasionally failing to maintain minimal personal hygiene (*e.g.*, smears feces), or gross impairment in communication (*e.g.*, largely incoherent or mute). DSM-IV-TR at 34.

[3] A GAF score between 51 and 60 indicates moderate symptoms (*e.g.,* flat affect and circumstantial speech, occasional panic attacks), or moderate difficulty in social, occupational, or school functioning (*e.g.*, few friends, conflicts with peers or co-workers).

having decreased interest in activities. Plaintiff reported his concentration to be intermittent. Plaintiff reported that he had been previously diagnosed with bipolar disorder, schizophrenia, and gout. Plaintiff reported that he hears voices telling him to hang himself. Plaintiff reported no history of alcohol use. Physical examination was unremarkable. Psychiatric examination showed plaintiff to be oriented times four and not to be anxious. Plaintiff's affect was normal. Dr. Afshar diagnosed plaintiff with bipolar disorder and prescribed Celexa, Trazodone, and Risperidone. Medication was also prescribed for elevated blood pressure. Plaintiff was referred to social services. (Tr. 290-91, 295-98.)

### IV. The ALJ's Decision

The ALJ found that plaintiff had not engaged in substantial gainful activity since November 12, 2010, the date of his SSI application. The ALJ found plaintiff's gout, osteoarthritis, post-traumatic and post-surgical arthralgias in the right elbow, schizophrenia, depression, bipolar disorder, and substance abuse disorder to be severe impairments, but that plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 13.) The ALJ found that plaintiff had the RFC to perform medium work as defined in the Regulations,[4] with additional limitations that he could understand, remember, and

_____

[4] Medium work "involves lifting no more than 50 pounds at a time with frequent lifting or

carry out at least simple instructions and non-detailed tasks; and should not perform work that includes more than infrequent handling of customer complaints. (Tr. 14-15.)  The ALJ determined that plaintiff was unable to perform any of his past relevant work.  Considering plaintiff's age, education, work experience, and RFC, the ALJ found vocational expert testimony to support a finding that plaintiff could perform other work as it exists in significant numbers in the national economy, and specifically, mold filler, filter operator, and housekeeping/cleaner. The ALJ therefore found that plaintiff had not been under a disability since November 12, 2010.  (Tr. 19-20.)

## V.  Discussion

To be eligible for SSI under the Social Security Act, plaintiff must prove that he is disabled.  *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001); *Baker v. Secretary of Health & Human Servs.,* 955 F.2d 552, 555 (8th Cir. 1992). The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 1382c(a)(3)(A).  An individual will be declared disabled "only if his

---

carrying of objects weighing up to 25 pounds."  20 C.F.R. § 416.967(c).  Medium work also includes the ability to perform light work, *id.,* which involves a good deal of walking or standing, or may involve sitting most of the time with some pushing and pulling of arm or leg controls.  20 C.F.R. § 416.967(b).

physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  42 U.S.C. § 1382c(a)(3)(B).

To determine whether a claimant is disabled, the Commissioner engages in a five-step evaluation process.  *See* 20 C.F.R. § 416.920; *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987).  The Commissioner begins by deciding whether the claimant is engaged in substantial gainful activity.  If the claimant is working, disability benefits are denied.  Next, the Commissioner decides whether the claimant has a "severe" impairment or combination of impairments, meaning that which significantly limits his ability to do basic work activities.  If the claimant's impairment(s) is not severe, then he is not disabled.  The Commissioner then determines whether claimant's impairment(s) meets or equals one of the impairments listed in 20 C.F.R., Part 404, Subpart P, Appendix 1.  If claimant's impairment(s) is equivalent to one of the listed impairments, he is conclusively disabled.  At the fourth step, the Commissioner establishes whether the claimant can perform his past relevant work.  If so, the claimant is not disabled.  Finally, the Commissioner evaluates various factors to determine whether the claimant is capable of performing any other work in the economy.  If not, the claimant is declared disabled and becomes entitled to disability benefits.  For claimants

seeking SSI benefits, such benefits are not payable for a period prior to the application. *Cruse v. Bowen*, 867 F.2d 1183, 1185 (8th Cir. 1989).

The decision of the Commissioner must be affirmed if it is supported by substantial evidence on the record as a whole. 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Estes v. Barnhart*, 275 F.3d 722, 724 (8th Cir. 2002). Substantial evidence is less than a preponderance but enough that a reasonable person would find it adequate to support the conclusion. *Johnson v. Apfel*, 240 F.3d 1145, 1147 (8th Cir. 2001). This "substantial evidence test," however, is "more than a mere search of the record for evidence supporting the Commissioner's findings." *Coleman v. Astrue*, 498 F.3d 767, 770 (8th Cir. 2007) (internal quotation marks and citation omitted). "Substantial evidence on the record as a whole . . . requires a more scrutinizing analysis." *Id.* (internal quotation marks and citations omitted).

To determine whether the Commissioner's decision is supported by substantial evidence on the record as a whole, the Court must review the entire administrative record and consider:

1.    The credibility findings made by the ALJ.

2.    The plaintiff's vocational factors.

3.    The medical evidence from treating and consulting physicians.

4.    The plaintiff's subjective complaints relating to exertional and non-exertional activities and impairments.

5. Any corroboration by third parties of the plaintiff's impairments.

6. The testimony of vocational experts when required which is based upon a proper hypothetical question which sets forth the claimant's impairment.

*Stewart v. Secretary of Health & Human Servs.,* 957 F.2d 581, 585-86 (8th Cir. 1992) (internal citations omitted). The Court must also consider any evidence which fairly detracts from the Commissioner's decision. *Coleman*, 498 F.3d at 770; *Warburton v. Apfel*, 188 F.3d 1047, 1050 (8th Cir. 1999). "If, after reviewing the entire record, it is possible to draw two inconsistent positions, and the Commissioner has adopted one of those positions," the Commissioner's decision must be affirmed. *Anderson v. Astrue*, 696 F.3d 790, 793 (8th Cir. 2012). The decision may not be reversed merely because substantial evidence could also support a contrary outcome. *Young v. Apfel*, 221 F.3d 1065, 1068 (8th Cir. 2000).

Plaintiff first criticizes the ALJ's treatment of the consultative examinations conducted by Drs. Mades and Park in this cause, arguing that results of one-time medical evaluations cannot constitute substantial evidence upon which an ALJ may base her decision. While, as a general matter, the report of a consulting physician who examined a claimant once does not constitute substantial evidence on the record as whole, *see Wagner v. Astrue*, 499 F.3d 842, 849 (8th Cir. 2007), a review of the ALJ's decision here shows the ALJ not to have relied solely on the

reports of consulting physicians to make her determination of non-disability. Instead, in making her determination, the ALJ reviewed all the evidence of record, including medical evidence of the consultative examinations, x-ray reports, and examinations conducted at clinics and hospitals. The ALJ also considered non-medical evidence of record, including plaintiff's testimony, work record, and third party observations. *Accord* Social Security Ruling 96-8p, 1996 WL 374184, at *7 (Soc. Sec. Admin. July 2, 1996).

Further, the Regulations define a "treating source" as a claimant's "own physician, psychologist, or other acceptable medical source who provides you, or has provided you, with medical treatment or evaluation and who has, or has had, *an ongoing treatment relationship with you.*" 20 C.F.R. § 416.902 (emphasis added). The record contains no evidence from a medical source that can be considered a treating source but instead contains evidence only from one-time examinations and one brief hospitalization. The undersigned finds it incongruous to argue that the ALJ erred by relying on reports of consulting physicians who examined plaintiff on one occasion when the record contains only reports of one-time examinations. Accordingly, plaintiff's claim that the ALJ erred by relying on reports of one-time examining physicians fails.

To the extent plaintiff contends that the ALJ erred when she failed to include specific physical limitations in the RFC despite finding at Step 2 of the sequential

analysis that plaintiff suffered from severe physical impairments, including gout, osteoarthritis, and arthralgias involving the right elbow, plaintiff's claim must fail. In *Lacroix v. Barnhart*, 465 F.3d 881 (8th Cir. 2006), the claimant made this same argument, that is, that the ALJ's Step 4 RFC analysis was inconsistent with the earlier determination made at Step 2 that plaintiff's impairments significantly limited her functional abilities. The Eighth Circuit soundly rejected this argument inasmuch as "[e]ach step in the disability determination entails a separate analysis and legal standard." *Id.* at 888 n.3. Because plaintiff bases his argument here on a contention that the ALJ's analysis as to his physical impairments is inconsistent between Step 2 and Step 4 of the sequential analysis, his argument must be rejected on the basis of the Eighth Circuit's reasoning in *Lacroix*.

Finally, plaintiff contends that the ALJ failed to identify the evidence of record that supported her RFC findings, specifically arguing that the ALJ's decision was unclear as to what evidence supported her findings regarding plaintiff's mental RFC. Plaintiff appears to complain that the ALJ's mental RFC assessment was more restrictive than what the evidence of record showed. (*See* Pltf.'s Brief, Doc. #16 at p. 4.) For the following reasons, plaintiff's claim fails.

In her RFC assessment, the ALJ found that plaintiff could understand, remember, and carry out simple instructions and non-detailed tasks; and should not perform work that includes more than infrequent handling of customer complaints.

(Tr. 14-15.)  Although plaintiff is correct that Dr. Mades rendered no psychiatric diagnosis but instead diagnosed only substance abuse disorder, the ALJ did not limit her consideration of plaintiff's limitations to only those observed by Dr. Mades.  Indeed, as noted above, the ALJ reviewed all the medical and non-medical evidence of record in assessing plaintiff's RFC.  In her decision, the ALJ considered plaintiff's testimony that he experienced memory loss and confusion, and determined on account thereof that plaintiff had moderate difficulties in concentration, persistence, or pace.  (Tr. 18.)  This finding is consistent with the conclusion that plaintiff should be limited to the simple work and non-detailed tasks as described in the RFC.  *See Howard v. Massanari*, 255 F.3d 577, 582 (8th Cir. 2001) (RFC limitation to simple, repetitive, routine tasks adequately captures deficiencies in concentration, persistence, or pace); *Brachtel v. Apfel*, 132 F.3d 417, 421 (8th Cir. 1997) (ability to do simple, repetitive work not requiring close attention to detail sufficiently describes deficiencies in concentration, persistence, and pace).

Further, to the extent the ALJ included an additional limitation that plaintiff should not perform work that involves more than infrequent handling of customer complaints, a review of the record shows this finding to be in accord with the evidence, not at odds with it.  Although the ALJ acknowledged that plaintiff reported getting along fine with people and was able to go out in public among

people (*see* Tr. 18), other evidence nevertheless showed that plaintiff experienced paranoia, felt aggression when people "messed with" him, and did not want to be around people who had been drinking. Given this evidence, the ALJ's determination to limit plaintiff's involvement with customer complaints was not error.

Regardless, the ALJ's imposition of RFC limitations more restrictive than what plaintiff claims the evidence shows gives rise to nothing more than harmless error. Nothing before the Court shows, and indeed plaintiff does not argue, that a less restrictive mental RFC would have resulted in a finding of disability. Because the case would not have been decided differently in the absence of the ALJ's claimed error in determining plaintiff's RFC, any such error was harmless. *See Byes v. Astrue*, 687 F.3d 913, 917-18 (8th Cir. 2012). *See also Hepp v. Astrue*, 511 F.3d 798, 806 (8th Cir. 2008) (declining to remand for alleged error in opinion when error "had no bearing on the outcome") (internal quotation marks omitted).

Accordingly, for the reasons set out above on the claims raised by plaintiff on this appeal, a reasonable mind can find the evidence of record sufficient to support the ALJ's determination that plaintiff has not been disabled since he applied for SSI on November 12, 2010. Because substantial evidence on the record as a whole supports the ALJ's decision, it must be affirmed. *Davis v. Apfel*, 239 F.3d 962, 966 (8th Cir. 2001). This Court may not reverse the decision merely

because substantial evidence exists that may support a contrary outcome.

Therefore,

**IT IS HEREBY ORDERED** that the decision of the Commissioner is

**AFFIRMED**, and plaintiff's Complaint is dismissed with prejudice.

A separate Judgment in accordance with this Memorandum and Order is

entered this same date.


_____/s/ Terry I. Adelman_____
UNITED STATES MAGISTRATE JUDGE


Dated this 26th day of March, 2015.